Requestor: Hon. Richard C. Surles, Commissioner New York State Office of Mental Health 44 Holland Avenue Albany, N Y 12229
Written by: Robert Abrams, Attorney General
Your Executive Deputy Commissioner has requested an opinion of the Attorney General as to whether Allen Morganstein, M.D., employed by the Office of Mental Health ("OMH") as a chief medical officer at the Western New York Children's Psychiatric Center ("WNYCPC") under a contract with the Liberty Healthcare Corporation, is indemnified and defended by the State.
You have informed us that OMH has encountered considerable difficulty in recruiting staff and administrative physicians for its facilities in the western part of the State. In order to remedy this situation, you contracted with the Liberty Healthcare Corporation, which hires physicians and assigns them to contracting employers. Dr. Morganstein's services as chief medical officer at WNYCPC are provided through this contract.
You sought an advisory opinion from the New York State Ethics Commission concerning whether Dr. Morganstein is subject to sections 73, 73-a and 74 of the Public Officers Law. Advisory Opinion No. 93-6. You have provided us with a copy of that opinion as a resource for determining the relevant background information.
In 1989, OMH contracted with the Liberty Healthcare Corporation to recruit and hire qualified psychiatrists to fill vacant positions and provide administrative support. The contract between OMH and Liberty provides in part:
 The physicians recruited by Liberty must be acceptable to the director of WNYCPC;
 The director and governing body of WNYCPC and not Liberty will continue to be ultimately responsible for the quality of care provided to the patients of the facility;
 Liberty must remove any person who, in the judgment of the director of WNYCPC is failing to provide a high quality of medical or administrative services;
 Liberty will direct its employees to follow at all times the administrative policies and procedures of WNYCPC;
 Liberty will assign its personnel to such inpatient services as may be required from time to time by the director of WNYCPC;
 Liberty is an independent contractor and neither it or its employees are agents or employees of OMH;
 Any traveling expenses incurred by physicians in providing services at the request of OMH in connection with the contract shall be payable by OMH;
 Liberty and OMH may require any physician providing services under the contract to restrict or limit the private practice of medicine in accordance with the outside employment policy of WNYCPC.
Dr. Morganstein's current position has been designated Executive/Clinical Director. In this capacity, he
 "is the Chief Executive Officer and is responsible to the Regional Director [of OMH] and, ultimately, to the Commissioner [of OMH], for all professional, administrative and support activities of the WNYCPC under the Mental Hygiene Law of the State of New York."
The Executive/Clinical Director is
 "responsible for the administration of all treatment programs and, on a broader level, for the delivery of all psychiatric/medical and medical ancillary services by both psychiatric center staff and consultants."
Dr. Morganstein supervises approximately 200 OMH employees and is responsible for 70 inpatients. OMH now proposes to appoint Dr. Morganstein to a full time policy making State position as clinical director of WNYCPC for which he would receive $1.00 per year directly from OMH and no State benefits. He would continue to receive compensation, fringe and retirement benefits from Liberty. His duties and responsibilities would remain the same.
The question is whether Dr. Morganstein receives the protection of section 17 of the Public Officers Law as an employee of the State. Section 17 provides for the defense and indemnification by the State of State employees for acts or omissions committed in the performance of their duties. The term "employee" means a person holding a position by election, appointment or employment in the service of the State, whether or not compensated, or a volunteer expressly authorized to participate in a State-sponsored volunteer program. Public Officers Law § 17(1)(a). The term "employee" does not include an independent contractor. Ibid. Narrow exceptions to this restriction have, however, been established by the State Legislature. E.g., § 17(1)(a) — (h).
Section 7.35 of the Mental Hygiene Law is one of those exceptions and provides that section 17 coverage shall apply to
 "any physician, dentist, psychologist, nurse or certified social worker, licensed to practice pursuant to the New York education law, who is rendering professional treatment authorized under such license at the request of the office or an office facility to patients receiving care or professional consultation from the office while rendering such professional treatment."
This provision establishes a narrow exception to the exclusion of independent contractors from section 17 coverage. Bill Jacket, L 1989, ch 435; cf., 1980 Op Atty Gen (Inf) 40. By its express terms, the exception would cover Dr. Morganstein as to his treatment of patients but would not cover his administrative responsibilities. To the extent that section7.35 of the Mental Hygiene Law constitutes an exception to the general rule of excluding independent contractors, it is to be strictly construed. See, 1988 Op Atty Gen 22. In view of the policy to construe defense and indemnification coverage narrowly, we believe it would be inappropriate to view Dr. Morganstein as anything other than an independent contractor. Only the Legislature can provide for coverage of Dr. Morganstein as to his administrative responsibilities.
We conclude that section 7.35 of the Mental Hygiene Law only provides defense and indemnification coverage to Dr. Morganstein with respect to the treatment of patients but not as to administrative functions.